# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: 6/12/2020 10:00 AM - 10:00 AM
Courtroom Number: 2510
Location: District 1 Court
Cook County, IL

FILED
2/24/2020 12:39 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH01810

8517329

FILED DATE: 2/24/2020 12:39 PM   2020CH01810

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Jordan Stein

(Name all parties)

v.

Claridai, Inc.

Case No. 2020CH01810

☑ SUMMONS    ☐ ALIAS SUMMONS

To each Defendant:   Clarifai, Inc., c/o Incorporating Services, LTD
3500 S. Dupont HWY, Dover DE 19901

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias-Summons**                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 39042

Atty Name: Keith Keogh

Atty. for: Plaintiff

Address: 55 W. Monroe St, Suite 3390

City: Chicago

State: IL    Zip: 60603

Telephone: 312-726-1092

Primary Email: Keith@KeoghLaw.com

Witness: 2/24/2020 12:39 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 2 of 3

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 2/24/2020 12:39 PM   2020CH01810

**12-Person Jury**

Courtroom Number: 2510
Location: District 1 Court
Cook County, IL

FILED
2/13/2020 3:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

8472889

JORDAN STEIN, individually and on )
behalf of others similarly situated, )
)
Plaintiffs, )
)
v. )
)
CLARIFAI, INC., )
)
Defendant. )

Case No. 2020CH01810

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Jordan Stein, individually and on behalf of all others similarly situated, brings

this class action complaint pursuant to 735 ILCS 5/2-801, *et seq.*, against Defendant Clarifai, Inc.

("Clarifai" or "Defendant") for its violations of the Illinois Biometric Information Privacy Act,

740 ILCS 14/1, *et seq.* ("BIPA") and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action for damages and other legal and equitable remedies

resulting from the illegal actions of Clarifai in surreptitiously collecting, capturing, storing, using,

and profiting from Plaintiff's and other similarly-situated individuals' biometric identifiers without

informed written consent, in direct violation of BIPA.

2.      A "biometric identifier" is any personal feature that is unique to an individual,

including, but not limited to fingerprints, iris scans, and scans of face or hand geometry. 740 ILCS

14/10.

3.      The Illinois Legislature has found that "[b]iometrics are unlike other unique

identifiers," such as social security numbers which can be changed if compromised. 740 ILCS

91430_3

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

14/5(c). "Biometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

4.      Recognizing the need to protect citizens from these risks, Illinois enacted BIPA, which generally prohibits private entities like Clarifai from obtaining and/or possessing an individual's biometrics unless it first: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) provides that person with written notice of the specific purpose and length of term for which such biometric identifiers and/or information is being collected, stored, and used; (3) receives a written release from the person authorizing the collection of his or her biometric identifiers and/or information; and (4) publishes a publicly-available retention schedule and guidelines for permanently destroying biometric identifiers and/or information. *See* 740 ILCS 14/15(a)-(b).

5.      In direct violation of these requirements, Clarifai harvested biometric identifiers from tens (if not hundreds) of thousands of unwitting Illinois residents. With the assistance of its Chicago-based investors, Clarifai secretly accessed profile photographs OKCupid users had uploaded to OKCupid, one of the world's largest dating websites. After obtaining these images, Clarifai scanned the facial geometry of each individual depicted therein to create unique "face templates," which it used to develop and train its facial recognition technology.

6.      BIPA also makes it unlawful for private entities such as Clarifai to profit from a person's biometric identifiers. *See* 740 ILCS 14/15(c). Nevertheless, Clarifai has continuously and systematically marketed and sold the facial recognition technology derived from the illegally-obtained biometric identifiers described above.

7.      Accordingly, Plaintiff, on behalf of herself and all other similarly-situated

2

91430_3

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

individuals, brings this action to prevent Clarifai from further violating the privacy rights of those Illinois residents affected by its biometric-harvesting scheme, and to recover statutory damages for Clarifai's unlawful collection, storage, use, and commercial exploitation of those individuals' biometric identifiers.

## PARTIES

8.      Plaintiff Jordan Stein is, and has been at all relevant times, a resident and citizen of Illinois.

9.      Defendant Clarifai is a private, for-profit corporation organized under Delaware law, and headquartered in New York, New York.

10.     Founded in 2013, Clarifai is an artificial intelligence company that offers a variety of autonomous image recognition services including, but not limited to, facial recognition technology. Clarifai markets this technology throughout the United States, including in Illinois.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over Clarifai pursuant to 735 ILCS 5/2-209 based on the commission of a tortious act in Illinois. As discussed herein, Clarifai illegally obtained images of Plaintiff and the Class members who reside in Illinois. Moreover, Clarifai's conduct arose from its commercial contacts with Illinois, as Clarifai requested and received access to Plaintiff's and the Class members' photographs from one of Clarifai's Illinois-based investors.

12.     Venue is proper under 735 ILCS 5/1-108 and 735 ILCS 5/2-101 as a substantial portion of the transactions giving rise to the claims alleged herein occurred in Cook County. Specifically, the activities giving rise to the claims occurred within the City of Chicago, Illinois, where Plaintiff resides and engaged in transactions relevant to her claim. Further, the sole Defendant does not reside in Illinois, and thus, pursuant to 735 ILCS 5/2-101, this action may be

91430_3

FILED DATE: 2/13/2020 3:07 PM · 2020CH01810

brought in any Illinois county.

## FACTUAL BACKGROUND

### *Illinois' Biometric Information Privacy Act*

13.    Biometrics are unlike other identifiers because they are a permanent, biologically unique identifier associated with the individual.  Thus, once compromised, the individual has no recourse and is at heightened risk for identity theft.  *See* 740 ILCS 14/5(c).

14.    In the 2000's, major national corporations started using Chicago and other locations in Illinois to test new applications of biometric-facilitated transactions. *See* 740 ILCS 14/5(b).

15.    In late 2007, a biometrics company called Pay by Touch—which provided major retailers throughout the State of Illinois with biometric scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois legislature because suddenly there was a serious risk that citizens' biometric records—which can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections. The bankruptcy also highlighted that many persons who used the biometric scanners were unaware that the scanners were transmitting their data to the now-bankrupt company, and that their biometric identifiers could then be sold to unknown third parties.

16.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008.  Illinois House Transcript, 2008 Reg. Sess. No. 276, p.249 (May 30, 2008); *see also* 740 ILCS 14/5(g).

17.    BIPA makes it unlawful for a company to collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier unless it first:

> a) informs the subject in writing that a biometric identifier is being collected or stored;

4

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

b) informs the subject in writing of the specific purpose and length of term for which a biometric identifier is being collected, stored, and used; and

c) receives a written release executed by the subject of the biometric identifier.

740 ILCS 14/15(b).

18.     BIPA defines a "written release" as "informed written consent." 740 ILCS 14/10.

19.     BIPA also requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers when the initial purpose for collecting such identifiers has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

20.     BIPA further prohibits a private entity in possession of a biometric identifier from selling, leasing, trading, or otherwise profiting from that identifier. 740 ILCS 14/15(c)-(d).

21.     One of the most prevalent uses of biometric identifiers is in facial recognition technology, which works by scanning a human face or an image thereof, extracting facial feature data based on specific "biometric identifiers" (*i.e.* details about the face's geometry as determined by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a face template database. If a database match is found, an individual may be identified.

22.     The use of facial recognition technology in the commercial context presents numerous consumer privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, U.S. Senator Al Franken stated that "there is nothing inherently right or wrong with [facial recognition technology, but] if we do not stop and carefully consider the way we use [it], it may also be abused in ways that could threaten basic

5

aspects of our privacy and civil liberties."[1] Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[2]

*The Need to Train Facial Recognition Algorithms*

23.     Facial recognition technology is based on algorithms that learn how to recognize human faces and the hundreds of ways in which each one is unique.

24.     These algorithms create a unique "face template" of a person's facial geometry by scanning, identifying and measuring various facial landmarks, such as the location of the mouth, chin, nose, ears, eyes and eyebrows.

25.     To automatically extract face templates from new images, a facial recognition algorithm must be "trained" to identify and measure the relevant facial landmarks.

26.     This is typically accomplished by the algorithm evaluating "triplet" sets of photographs—*i.e.* two images of the same person (known as the "anchor" and "positive sample"), and one of a completely different person (known as the "negative sample").

27.     The algorithm reviews the measurements collected from each image, and then adjusts itself so that the measurements collected from the anchor sample are closer to those collected from the positive sample, and further apart from those collected from the negative sample.

28.     After repeating this process millions of times with images of thousands of different people, the algorithm learns to reliably scan for and collect a face template of the geometry of any given face.

---

[1] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary,* 112th Cong. 1 (2012), *available at* https://www.judiciary.senate.gov/download/statement-of-franken-pdf (last visited Feb. 7, 2020).
[2] *Id.*

6

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

*Clarifai Secretly Harvests and Uses Biometric Identifiers in Violation of BIPA, and Clarifai's Violations are Intentional or Reckless and Ongoing*

29.     The process of training facial recognition algorithms requires vast quantities of images from a diverse array of faces.

30.     As first revealed in a July 13, 2019 New York Times article, Clarifai built a massive "face database" (the "Database") of OKCupid users' profile photographs obtained from OKCupid, a popular dating website.[3]

31.     Clarifai gained access to those profile photographs from one of its investors, a Chicago-based venture capital group launched by OKCupid's founders.

32.     According to an OKCupid spokeswoman, Clarifai contacted the company in 2014 to inquire about collaborating on artificial intelligence and facial recognition technology.

33.     Clarifai created the Database to develop and train the algorithms used in its facial recognition technology.   To that end, Clarifai created thousands of unique face templates by scanning the biometric information in each photograph contained in the Database and extracting the unique geometry of each face detected therein.

34.     In direct violation of BIPA, Clarifai did not notify those Illinois residents whose photographs appeared in the Database about the collection of their facial geometry, nor did it obtain a written release from any of those individuals.  *See* 740 ILCS 14/15(b)(1), (3).

35.     Clarifai also violated its statutory obligation to inform those individuals about the purpose and length of the term for which their biometric identifiers would be collected, stored, and used.  *See* 740 ILCS 14/15(2).

36.     Clarifai did not notify Plaintiff or the Class members that Clarifai (or anyone else)

---

[3] Cade Metz, *Facial Recognition Tech Is Growing Stronger, Thanks to Your Face*, New York Times, July 13, 2019, available at https://www.nytimes.com/2019/07/13/technology/databases-faces-facial-recognition-technology.html (last visited Feb. 7, 2020).

had gained access to their OKCupid profile photographs.

37.    Given the secretive nature of the scheme, Plaintiff and the Class members had no way of knowing Clarifai had gained access to their OKCupid profile photographs or collected, used and profited from their biometric identifiers until those facts were revealed by a  July 13, 2019 New York Times article.

38.    In the same article, Clarifai's CEO, Matt Zeiler, revealed that the company signed an agreement with a large social media company to use the social media company's users' images for training facial recognition algorithms. Zeiler did not, however, disclose the name of this social media company.

39.    Thus, Clarifai's surreptitious harvesting of biometric identifiers is ongoing.

40.    To make matters worse, Zeiler has publicly stated that Clarifai would sell its facial recognition technology to foreign governments.

41.    In January 2019, Clarifai employee Liz O'Sullivan posted an open letter to CEO Matt Zeiler (the "Open Letter") on the company message board.

42.    Liz O'Sullivan managed Clarifai's face Database, and was originally tapped to serve as an ethics advisor of Clarifai.

43.    The Open Letter to Matt Zeiler voiced Ms. Sullivan's and other employees' concerns, and posed several questions about where their work for Clarifai was headed. The Open Letter stated, *inter alia*, the following:

   a) "[I]n conversations I've had with you and with other members of the executive team about our position on ethics in facial recognition, there have been mixed messages, and our values seem to be changing every day."

   b) "New executives have indicated that there's no project we would fail to consider if the price is right"

   c) "Google and Amazon employees' open letters have described some of the more obvious applications of CFR that are terrifying (mass surveillance, social credit

8

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

FILED DATE: 2/13/2020 3:07 PM 2020CH01810

scoring, political oppression/registration), but there is a fourth elephant in the room that few are addressing: autonomous weapons."

d) "[W]ill Clarifai participate in projects that might lead to large scale warfare, mass invasions of privacy, or (perhaps a bit dramatically) genocide? Because that's the fear behind autonomous weapons, after all."

e) "We in the industry know that all technology can be compromised. Hackers hack. Bias is unavoidable. . . . And that's why it's concerning that certain executives on the team have indicated in private conversations that autonomous weapons would be perfectly ok for us to build."

f) "We very nearly went live with a version of CFR that had 10% more errors when predicting on people with dark skin. If this technology had been sold to a government for security purposes, it would certainly have a negative effect on all the dark-skinned people who would be disproportionately mistaken for criminals."

g) "[T]he last questions we have relate our philosophy on data collection. Because the way we treat consumer data is an important part of our ethical framework. It demonstrates how far we are willing to go in the interest of profit, at the expense of privacy and consent. And just this month, we've been asked to download data from cameras whose owners haven't given consent at all (Insecam), and a few other sources that may walk a legal line but are sketchy at best. There are even rumors going around that the photos in the dataset used to build the general model were stolen from a stock photo site."

h) "All of these things combined with the change in plan regarding our board ethics committee lead us to ask the following questions: . . .

  • Will Clarifai vet every military contract to ensure that our work does not get used in the creation of autonomous weapons? . . .

  • Will Clarifai sign the open letter [written by Stephen Hawking and Elon Musk in 2014], guaranteeing that we never intend to work on autonomous weapons, even if a large enough contract comes along?

  • Will Clarifai promise not to sell CFR (or any similar technology that has the potential to be used for oppression) to any totalitarian or otherwise oppressive government for any purpose ever? . . .

  • Will Clarifai promise to evaluate every algorithm we build for racial/age/gender/disability bias as part of our process, and not just as an ad hoc afterthought? . . .

  • Will Clarifai promise never to use illegally obtained or otherwise ethically dubious data?"

9

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

i) "[W]e should not be willing to risk the safety, privacy, or survival of humans globally just so that Clarifai can have an IPO."

44. Approximately one week later, Clarifai CEO Matt Zeiler called a company-wide meeting and announced that Clarifai's facial recognition technology would be used for autonomous weapons. Zeiler explained that, while Clarifai would not be building missiles, its technology was going to be useful for those and will make its way into autonomous weapons through Clarifai's partnerships.

*Facts Pertaining to Plaintiff Stein*

45. In 2013, Plaintiff created a user profile with OKCupid.

46. At this time, Plaintiff uploaded approximately five (5) digital photographs of herself to OKCupid.

47. Plaintiff created, managed, and uploaded those photographs from computers and/or mobile devices located in Illinois.

48. Plaintiff maintained an OKCupid user profile from 2013 through present day.

49. Plaintiff maintained an OKCupid user profile when Clarifai obtained the profile photographs it used to create the Database. Thus, Plaintiff's profile photographs are contained in the Database.

50. As with the other photographs in the Database, Clarifai has captured biometrics from Plaintiff's profile photographs by identifying, scanning and measuring her facial landmarks, and using that data to create a unique template of Plaintiff's face.

51. Clarifai used Plaintiff's face template (scans of face geometry) in the same manner as the others collected from photographs in the Database—to train and develop the facial recognition technology that it sells to customers throughout the world.

52. At no time did Clarifai inform Plaintiff, in writing or otherwise, about the

collection, receipt, storage, or use of her biometric identifiers.

53.     At no time did Clarifai notify Plaintiff, in writing or otherwise, about the purpose and length of time for which her biometric identifier was being collected, stored, and used.

54.     At no time did Plaintiff provide Clarifai with an executed written release authorizing the collection, receipt, storage, and/or use of her biometric identifier.

55.     Plaintiff has never given informed written consent for Clarifai to collect, capture, receive, store or use her facial geometric data.

56.     Plaintiff would not have given informed written consent for Clarifai to use her biometric information for the purpose of training facial recognition software for its own profit.

57.     Plaintiff was not informed of any biometric data retention policy of Clarifai, nor has she ever been informed as to whether and when Clarifai will ever permanently delete her facial geometric data.

58.     As a result of Clarifai's actions, Plaintiff continues to worry about how the biometric data Clarifai collected from her photographs has been and will continue to be used, what has and will happen her biometric data Clarifai collected, whether Clarifai will ever delete her biometric information, and whether (and with whom) Clarifai shared her biometric information.

## CLASS ALLEGATIONS

59.     Plaintiff brings this action on behalf of herself class of similarly-situated individuals, defined as follows:

> All Illinois residents who had scans of their face geometry collected, captured, purchased, received through trade, or otherwise obtained by Clarifai within five years of the filing of this lawsuit.

The following people are excluded from the Class: (1) any judge presiding over the action and their families and staff; (2) Defendant and its owners, officers, directors, parents, subsidiaries,

11

successors, predecessors; and (3) Plaintiff's and Defendant's counsel and their staffs.

60. Certification of Plaintiff's claim for classwide treatment is appropriate because Plaintiff can prove the elements of her claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

61. **Numerosity – 735 ILCS 5/2-801(1)**. The members of the Class are so numerous that individual joinder of all Class members is impracticable. Clarifai unlawfully harvested biometric identifiers from more than 60,000 OKCupid users residing in Illinois. While the exact number of Class member is currently unknown to Plaintiff, this information can be ascertained from Clarifai's books and records, as well as OKCupid's records. Class members can be notified about the pendency of this action through recognized, Court-approved methods of notice dissemination, such as U.S. Mail, electronic mail, internet postings, and/or published notice.

62. **Commonality and Predominance – 735 ILCS 5/2-801(2)**. This action involves common questions of law and fact, which predominate over any questions affecting Class members, including, without limitation;

    a) whether Clarifai collected, captured, or otherwise obtained the Class members' biometric identifiers;

    b) whether Clarifai informed Class members in writing of the specific purposes for collecting, using, and storing their biometric identifiers;

    c) whether Clarifai obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the Class members' biometric identifiers;

    d) whether Clarifai disclosed or re-disclosed the Class members' biometric identifiers to any third party;

    e) whether Clarifai sold, leased, traded, or otherwise profited from the Class members' biometric identifiers;

    f) whether Clarifai maintained a publicly-available written policy establishing a retention schedule and guidelines for the destruction of biometric identifier and/or information at the time it collected Plaintiff's

FILED DATE: 2/13/2020 3:07 PM 2020CH01810

12

and the Class members' biometric identifiers;

g) whether Clarifai complies with any such written policy;

h) whether Clarifai violated BIPA; and

i) whether Clarifai's BIPA violations were negligent, reckless, or intentional.

63. **Adequacy of Representation – 735 ILCS 5/2-801(3).** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to those of the Class.

64. **Superiority – 735 ILCS 5/2-801(4).** A class action is appropriate to resolve the claims at issue because: (i) the prosecution of separate actions by the members of the Class would wastefully burden the judicial system with the need to resolve the common factual and legal questions this case presents over and over; (ii) requiring members of the Class to prosecute their own individual lawsuits would work an injustice, as it would prevent Class members who are unaware they have a claim, or lack the time, ability, or wherewithal to bring their own lawsuit and find a lawyer willing to take their case, to obtain relief; (iii) requiring individual Class member lawsuits would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests, or create conflicting and incompatible standards of conduct; and (iv) proceeding on a class basis will not create any significant difficulty in the management of this litigation, as the Class members will be easily identified from the business records of third parties (*e.g.* OkCupid), and the Class members' claims can be proven using common evidence. Thus, there will be no difficulty maintaining this case as a class action.

13

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

**COUNT I**
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiff and the Class)**

65.     Plaintiff incorporates the above allegations as if fully set forth herein.

66.     BIPA requires private entities such as Clarifai to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's .... biometric identifier or biometric information, unless [the entity] first: (1) informs the subject .... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject .... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b).

67.     Clarifai is a corporation, and thus constitutes a "private entity" under BIPA. *See* 740 ILCS 14/10.

68.     Plaintiff and the Class members are individuals whose "biometric identifiers," as defined by the BIPA—specifically, scans of their facial geometry—were collected, captured, purchased, received through trade or otherwise obtained, stored, and used by Clarifai.

69.     Clarifai violated BIPA by failing to inform Plaintiff and the Class, in writing, about the collection and storage of their biometric identifiers and/or biometric information before it occurred. *See* 740 ILCS 14/15(b)(1).

70.     Clarifai violated BIPA by failing to inform Plaintiff and the Class, in writing before the fact, of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being "collected, stored, and used." *See* 740 ILCS 14/15(b)(2).

14

91430_3

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

71.    Clarifai violated BIPA by collecting, capturing, purchasing, receiving through trade, and obtaining Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining a written release. *See* 740 ILCS 14/15(b)(3).

72.    In so doing, Clarifai deprived Plaintiff and the Class of their statutory right to maintain the privacy of their biometric identifiers.

73.    Clarifai carried out a deliberate scheme to secretly harvest biometric identifiers from millions of individuals, including Plaintiff and the Class members, without their knowledge or consent.

74.    Clarifai's conduct intentionally or recklessly violated BIPA with respect to Plaintiff and the Class members.

75.    In the alternative, Clarifai's conduct negligently violated BIPA with respect to Plaintiff and the Class members.

76.    Accordingly, Plaintiff, on behalf of herself and the Class, seeks to recover: (1) statutory damages of $5,000 for each intentional or reckless violation of BIPA, or in the alternative, $1,000 for each such negligent violation; (2) injunctive and other equitable relief as is necessary to require Clarifai to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers, as described herein; and (3) reasonable attorney's fees and costs of litigation.

**COUNT II**
**Violation of 740 ILCS 14/15(c)**
**(On Behalf of Plaintiff and the Class)**

77.    Plaintiff restates and re-alleges all paragraphs of this Complaint as though fully set forth herein.

91430_3

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

78.     BIPA makes it unlawful for private entities in possession of biometric identifiers or biometric information to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

79.     Clarifai is a corporation, and thus constitutes a "private entity" under BIPA. *See* 740 ILCS 14/10.

80.     Clarifai is in possession of Plaintiff's and the Class members' biometric identifiers (*i.e.* their facial geometry).

81.     Clarifai used Plaintiff's and the Class members' biometric identifiers to train and develop its facial recognition technology, which it sells to customers throughout the world.

82.     In so doing, Clarifai violated BIPA by profiting from Plaintiff's and the Class members' biometric identifiers. *See* 740 ILCS 14/15(c).

83.     Clarifai carried out a premeditated plan to commercially exploit the biometric identifiers that it illegally harvested from Plaintiff and the Class.

84.     Clarifai's conduct intentionally or recklessly violated BIPA with respect to Plaintiff and the Class members.

85.     In the alternative, Clarifai's conduct negligently violated BIPA with respect to Plaintiff and the Class members.

86.     Accordingly, Plaintiff, on behalf of herself and the Class, seeks to recover: (1) statutory damages of $5,000 for each intentional or reckless violation of BIPA, or in the alternative, $1,000 for each such negligent violation; (2) injunctive and other equitable relief as is necessary to prevent Clarifai from continuing to commercially exploit Plaintiff's and the Class's biometric identifiers; and (3) reasonable attorney's fees and costs of litigation.

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

## COUNT III
### Violation of 740 ILCS 14/15(a)
### (On Behalf of Plaintiff and the Class)

87.     Plaintiff restates and re-alleges all paragraphs of this Complaint as though fully set forth herein.

88.     BIPA requires private entities in possession of biometric data to establish and maintain a publicly-available retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. *See* 740 ILCS 14/15(a).

89.     Clarifai is a corporation, and thus constitutes a "private entity" under BIPA. *See* 740 ILCS 14/10.

90.     Clarifai is in possession of Plaintiff's and the Class members' biometric identifiers (*i.e.* their facial geometry).

91.     In violation of BIPA, Clarifai did not maintain the statutorily-mandated retention schedule and destruction guidelines at the time it collected Plaintiff's and the Class member's biometric identifiers. *See* 740 ILCS 14/15(a).

92.     Clarifai's conduct intentionally or recklessly violated BIPA with respect to Plaintiff and the Class members.

93.     In the alternative, Clarifai's conduct negligently violated BIPA with respect to Plaintiff and the Class members.

94.     Accordingly, Plaintiff, on behalf of herself and the Class, seeks to recover: (1) statutory damages of $5,000 for each intentional or reckless violation of BIPA, or in the alternative, $1,000 for each such negligent violation; and (2) reasonable attorney's fees and costs of litigation.

17

91430_3

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

## COUNT IV
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

95.   Plaintiff restates and re-alleges all paragraphs of this Complaint as though fully set forth herein.

96.   Clarifai obtained a monetary benefit from Plaintiff and the Class members, to their detriment, by profiting from the covert collection and use of their biometric identifiers.

97.   Plaintiff and the Class members did not authorize Clarifai to collect, capture, receive, otherwise obtain, use, or profit from their biometric identifiers.

98.   Clarifai appreciated, accepted, and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from its conduct toward Plaintiff and the Class as described herein.

99.   In particular, Clarifai secretly obtained Plaintiff's and the Class members' profile photographs from a third-party website for the sole purpose of harvesting their biometric identifiers, without permission and in violation of Illinois law.

100.   Clarifai used and profited from Plaintiff's and the Class member's biometric identifiers without providing any compensation for the commercial benefits it received.

101.   Under the principles of equity and good conscience, it would be unjust and unfair for Clarifai to be permitted to retain any of the benefits obtained from its unlawful collection and use of Plaintiff's and the Class members' biometric identifiers.

102.   Clarifai should be compelled to disgorge into a common fund or constructive trust all proceeds it unjustly received from the collection and use of Plaintiff's and the Class members' biometric identifiers.

FILED DATE: 2/13/2020 3:07 PM    2020CH01810

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jordan Stein, on behalf of herself and the Class, respectfully requests that the Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above (or on behalf of any other class the Court deems appropriate);

B.    Appointing Plaintiff as representative of the Class, and her undersigned attorneys as class counsel;

C.    Awarding liquidated of $5,000 for each intentional or reckless violation of BIPA that Clarifai committed, and $1,000 for each negligent violation;

D.    Providing such injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an order requiring Clarifai to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers, to cease its unlawful practice of profiting from Plaintiff's and the Class's biometric identifiers, and to permanently destroy Plaintiff's and the Class members' biometric identifiers;

E.    Requiring Clarifai to disgorge all profits it received from the collection and use of Plaintiff's and the Class members' biometric identifiers into a common fund or constructive trust;

F.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs; and

G.    Granting such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

19

FILED DATE: 2/13/2020 3:07 PM   2020CH01810

Dated: February 13, 2020

Respectfully submitted,

JORDAN STEIN, individually and on behalf of all
others similarly situated,

By: _/s/ Keith J. Keogh_____
Keith J. Keogh
Theodore H. Kuyper
Gregg M. Barbakoff
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com
gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*

91430_3

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/13/2020 3:35 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH01810

8473996

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JORDAN STEIN, individually and on
behalf of others similarly situated,      )
                                          )
                                          )
                         Plaintiff,       )     Case No. 2020CH01810
                                          )
        v.                                )     **JURY TRIAL DEMANDED**
                                          )
CLARIFAI, INC.,                           )
                                          )
                         Defendant.       )

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Pursuant to 735 ILCS 5/2-801, Plaintiff Jordan Stein, individually and on behalf of all others similarly situated, moves for class certification to remedy Defendant Clarifai, Inc.'s ("Clarifai") widespread violations of the Biometric Information Privacy Act ("BIPA"). The BIPA requires private entities that collect biometric data to inform the persons whose biometric information is being collected, in writing, the fact that it acquired their biometric information, the purpose for which it acquired that information, how long it will hold that information and when it will destroy it, and to also obtain a signed release from each such person allowing it to collect that information. The Act expressly covers face geometry used to identify an individual. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶1 (2019).

### I.    INTRODUCTION

1.    A "biometric identifier" is any personal feature that is unique to an individual, including, but not limited to fingerprints, iris scans, and scans of face or hand geometry. 740 ILCS 14/10.

2.    The Illinois Legislature has found that "[b]iometrics are unlike other unique

91659

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

identifiers," such as social security numbers which can be changed if compromised. 740 ILCS 14/5(c). "Biometrics . . . are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3.      Recognizing the need to protect citizens from these risks, Illinois enacted BIPA, which generally prohibits private entities like Clarifai from obtaining and/or possessing an individual's biometrics unless it first: (1) informs that person in writing that biometric identifiers or information will be collected or stored; (2) provides that person with written notice of the specific purpose and length of term for which such biometric identifiers and/or information is being collected, stored, and used; (3) receives a written release from the person authorizing the collection of his or her biometric identifiers and/or information; and (4) publishes a publicly-available retention schedule and guidelines for permanently destroying biometric identifiers and/or information. *See* 740 ILCS 14/15(a)-(b).

4.      In direct violation of these requirements, Clarifai harvested biometric identifiers from tens (if not hundreds) of thousands of unwitting Illinois residents. With the assistance of its Chicago-based investors, Clarifai secretly accessed profile photographs OKCupid users had uploaded to OKCupid, one of the world's largest dating websites. After obtaining these images, Clarifai scanned the facial geometry of each individual depicted therein to create unique "face templates," which it used to develop and train its facial recognition technology.

5.      BIPA also makes it unlawful for private entities such as Clarifai to profit from a person's biometric identifiers. *See* 740 ILCS 14/15(c). Nevertheless, Clarifai has continuously and systematically marketed and sold the facial recognition technology derived from the illegally-obtained biometric identifiers described above.

2

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

6.     In order to vindicate this important privacy-protection statute, Plaintiff seeks to have this Court certify the following class:

> All Illinois residents who had scans of their face geometry collected, captured, purchased, received through trade, or otherwise obtained by Clarifai within five years of the filing of this lawsuit.

7.     The proposed class is an ideal candidate for certification because every class member's claim arises from the same uniform course of conduct by Clarifai, and is thus based on the same facts and subject to the same defenses. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) ("there is no doubt that a template-based class poses common legal and factual questions, namely: did [defendant] … harvest biometric identifiers as contemplated under BIPA, and if so, did [defendant] give users prior notice of these practices and obtain their consent?").[1]

## II.    FACTS

8.     The complaint's allegations are "taken as true for purposes of determining class certification." *Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 235 (1st Dist. 2010).

9.     In 2013, Plaintiff created a user profile with OKCupid.  Compl., ¶ 45, attached hereto as **Exhibit A.**

10.    At this time, Plaintiff uploaded approximately five (5) digital photographs of herself to OKCupid. *Id.*, ¶ 46.

11.    Plaintiff created, managed, and uploaded those photographs from computers and/or mobile devices located in Illinois. *Id.*, ¶ 47.

---

[1] Because most procedural requisites of class certification are essentially the same under both 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal decisions cited herein. *See Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 761 (2d Dist. 2008).

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

12.     Plaintiff has maintained an OKCupid through the present day. *Id.*, ¶ 48.

13.     Plaintiff's user profile was active when Clarifai obtained the profile photographs it used to create the Database. Thus, Plaintiff's profile photographs are contained in the Database. *Id.*, ¶ 49.

14.     As with the other photographs in the Database, Clarifai has captured biometrics from Plaintiff's profile photographs by identifying, scanning and measuring her facial landmarks, and using that data to create a unique template of Plaintiff's face. *Id.*, ¶ 50.

15.     Clarifai used Plaintiff's face template (scans of face geometry) in the same manner as the others collected from photographs in the Database—to train and develop the facial recognition technology that it sells to customers throughout the world. *Id.*, ¶ 51.

16.     At no time did Clarifai inform Plaintiff, in writing or otherwise, about the collection, receipt, storage, or use of her biometric identifiers. *Id.*, ¶ 52.

17.     At no time did Clarifai notify Plaintiff, in writing or otherwise, about the purpose and length of time for which her biometric identifier was being collected, stored, and used. *Id.*, ¶ 53.

18.     At no time did Plaintiff provide Clarifai with an executed written release authorizing the collection, receipt, storage, and/or use of her biometric identifier. *Id.*, ¶ 54.

19.     Plaintiff has never given informed written consent for Clarifai to collect, capture, receive, store or use her facial geometric data. *Id.*, ¶ 55.

20.     Plaintiff would not have given informed written consent for Clarifai to use her biometric information for the purpose of training facial recognition software for its own profit. *Id.*, ¶ 56.

21.     Plaintiff was not informed of any biometric data retention policy of Clarifai, nor

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

has she ever been informed as to whether and when Clarifai will ever permanently delete her facial geometric data. *Id.*, ¶ 57.

22.      As a result of Clarifai's actions, Plaintiff continues to worry about how the biometric data Clarifai collected from her photographs has been and will continue to be used, what has and will happen her biometric data Clarifai collected, whether Clarifai will ever delete her biometric information, and whether (and with whom) Clarifai shared her biometric information. *Id.*, ¶ 58.

## III.    CLASS CERTIFICATION IS APPROPRIATE

23.      Class certification is a matter left to the Court's discretion, so long as such discretion is "exercised within the framework of the rules of civil procedure governing class actions." *S37 Mgmt. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496, ¶15 (1st Dist. 2011) (quoting *Smith v. Ill. Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006)).

24.      The rule of civil procedure governing class certification has four requirements: (1) the class is so numerous that joinder of all members as parties is impracticable ("Numerosity"); (2) Plaintiff's and the Class members' claims present common questions of law or fact that predominate over any questions affecting only individual members ("Commonality and Predominance"); (3) Plaintiff will fairly and adequately represent the class ("Adequacy"); and (4) a class action is an appropriate method for fairly and efficiently resolving the dispute. ("Superiority"). *See* 735 ILCS 5/2-801. Each requirement is readily satisfied in this case.

25.      **Numerosity – 735 ILCS 5/2-801(1).** Section 2-801's numerosity requirement is satisfied where the class is so numerous that joining all members in a single suit would "render the suit unmanageable" or when allowing multiple separate lawsuits "would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

*Steinberg v. Chicago Med. School*, 69 Ill. 2d 320, 337 (1977)). While there is no magic number at which joinder becomes unmanageable, courts have typically found numerosity satisfied when the class includes forty or more people. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990) (collecting cases).

26.     Here, the members of the Class are so numerous that individual joinder of all Class members is impracticable. Clarifai unlawfully harvested biometric identifiers from more than 60,000 OKCupid users residing in Illinois. Ex. A, ¶ 61. While the exact number of Class member is currently unknown to Plaintiff, this information can be ascertained from Clarifai's books and records, as well as OKCupid's records. Class members can be notified about the pendency of this action through recognized, Court-approved methods of notice dissemination, such as U.S. Mail, electronic mail, internet postings, and/or published notice. *Id.*

27.     **Commonality and Predominance – 735 ILCS 5/2-801(2).** "Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 54-55 (1st Dist. 2007) (quoting *Smith*, 223 Ill. 2d at 449). This action involves common questions of law and fact, which predominate over any questions affecting Class members, including, without limitation;

    a)  whether Clarifai collected, captured, or otherwise obtained the Class members' biometric identifiers;

    b)  whether Clarifai informed Class members in writing of the specific purposes for collecting, using, and storing their biometric identifiers;

    c)  whether Clarifai obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store the Class members' biometric identifiers;

6

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

d) whether Clarifai disclosed or re-disclosed the Class members' biometric identifiers to any third party;

e) whether Clarifai sold, leased, traded, or otherwise profited from the Class members' biometric identifiers;

f) whether Clarifai maintained a publicly-available written policy establishing a retention schedule and guidelines for the destruction of biometric identifier and/or information at the time it collected Plaintiff's and the Class members' biometric identifiers;

g) whether Clarifai complies with any such written policy;

h) whether Clarifai violated BIPA; and

i) whether Clarifai's BIPA violations were negligent, reckless, or intentional.

*Id.*, ¶ 62.

28.     **Adequacy of Representation – 735 ILCS 5/2-801(3).** This element requires that the named plaintiff's interests be aligned with and not antagonistic to the interests of the unnamed class members, and that the plaintiff's counsel be qualified, experienced and generally able to conduct the litigation. *See Steinberg*, 69 Ill. 2d at 338-39; *Ramirez*, 378 Ill. App. 3d at 56.

29.     That is the case here. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to those of the Class. *Id.*, ¶ 63.

30.     Equally important, Plaintiff's counsel and proposed class counsel at Keogh Law, Ltd. possess significant class action litigation experience and have been found adequate and appointed class counsel in numerous cases. *See* Declaration of Keith J. Keogh, ¶¶4-32, attached hereto as **Exhibit B.**

31.     **Superiority – 735 ILCS 5/2-801(4).** A class action is an appropriate method for fairly and efficiently resolving a dispute when it can "best secure economies of time, effort and

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

expense or accomplish the other ends of equity and justice that class actions seek to obtain." *Ramirez*, 378 Ill.App.3d at 56 (quoting *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 679 (2d Dist. 2006)). A class action will best secure economies of time, effort and expense here because it will resolve tens (if not hundreds) of thousands of identical claims in one fell swoop instead of requiring individual litigation of the same issues over and over. A class action also will accomplish the ends of equity and justice because the class members are individuals, their claims are relatively small, and there is no reason to assume that most or even many of them possess the time, energy and wherewithal to try to vindicate their rights on their own. As noted by the Illinois Appellate Court:

> Our courts have recognized that, 'in a large and impersonal society, class actions are often the last barricade of consumer protection.' The consumer class action is an inviting procedural device to address frauds that cause small damages to large groups. When brought by plaintiffs who have no other avenue of legal redress, the consumer class action provides restitution to the injured and deterrence to the wrongdoer.

*Gordon*, 224 Ill. App. 3d at 204 (quotation omitted); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 548 ("A class action is clearly superior to individual proceedings here. While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs ... The class will be manageable because members can be identified in a straightforward way."). Accordingly, a class action is appropriate for resolving this dispute.

32.     Because this case meets all of the requirements for class certification, the proposed class should be certified.

33.     Plaintiff will submit a supplemental memorandum in support of this motion upon the completion of appropriate discovery.

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

## IV.    CONCLUSION

Accordingly, this case satisfies the requirements of 735 ILCS 5/2-801. To the extent Admiral nonetheless chooses to contest class certification, discovery will quickly confirm that the requirements of 735 ILCS 5/2-801 are met. Accordingly, Plaintiff requests the following relief:

a)    Entry of a scheduling order setting dates for Plaintiff to file a memorandum in support of this motion (and for the parties to file response and reply briefs) after the completion of appropriate discovery;

b)    An order certifying the proposed class as defined above (or whatever amended definition(s) the Court finds to be appropriate under the law and facts);

c)    Appointment of Plaintiff as representative of the certified class; and

d)    Appointment of Keogh Law, Ltd. as class counsel.

Dated: February 13, 2020

Respectfully submitted,

JORDAN STEIN, individually and on behalf of all others similarly situated,

By:  /s/ Keith J. Keogh
Keith J. Keogh
Theodore H. Kuyper
Gregg M. Barbakoff
KEOGH LAW, LTD.
55 W. Monroe St., Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com
gbarbakoff@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*

9

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

# EXHIBIT 1

Firm No. 39042

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED DATE: 2/13/2020 3:35 PM  2020CH01810

| | | |
|---|---|---|
| JORDAN STEIN, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| CLARIFAI, INC., | ) ) ) | |
| Defendant. | ) | |

### DECLARATION OF KEITH J. KEOGH

Keith J. Keogh declares under penalty of perjury, that the following statements are true:

1.      I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify to the matters stated herein, I could and would do so competently.

2.      Keogh Law, Ltd. consists of five attorneys and focuses on class actions. I am a shareholder of the firm and member of the bars of the United States Court of Appeals for the First, Second, Third, Seventh, Ninth and Eleventh Circuits, Eastern District of Wisconsin, Northern District of Illinois, Central District of Illinois, Southern District of Indiana, District of Colorado, Middle District of Florida, Southern District of Florida, the Illinois State Bar, and the Florida State Bar, as well as several bar associations and the National Association of Consumer Advocates.

3.      In 2015, the National Association of Consumer Advocates honored me as the Consumer Attorney of the Year for my work in courts and with the FCC insuring the safeguards of the TCPA were maintained.

4.      My firm was class counsel in the four of the largest class action settlements involving an anti-identity theft law that aims to protect the privacy of personal information, called

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

the Fair and Accurate Credit Transactions Act. *Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D. Fla.) ($30.9 million dollars); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla., filed July 6, 2014) ($11 million dollars); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC (S.D. Fla., filed Aug. 29, 2014) ($7.5 million dollars); and *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla., filed Apr. 6, 2015) ($6.3 million dollars) (on appeal).

5.      I was also class counsel in some of the largest Telephone Consumer Protection Act ("TCPA") settlements in the country.  *See Hageman v. AT&T Mobility LLC, et al.*, Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation*, et al., 12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel)(Final Approval Granted February 12, 2015 for a $75 million settlement).

6.      I was also lead or class counsel in the following class settlements: *See Leung v XPO Logistics, Inc.*, 15 CV 03877, (N.D. Ill. 2018) (TCPA); *Martinez v Medicredit*, 4:16CV01138 ERW (E.D. Mo. 2018) (TCPA); *Martin v. Wells Fargo Bank, N.A.*, 16-cv-09483 (N.D. Ill. 2018) (FCRA); *Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al*, 15-CV-02419-PGS-LHG (D. NJ. 2018) (TCPA); *Legg v AEO*, 14-cv-02440-VEC (TCPA) (on appeal after final approval from professional objector); *Markos v Wells Fargo*, 15-cv-01156-LMM (N.D. Ga. (TCPA); *Ossola v Amex* 1:13-cv-04836 (N.D. Ill. 2016) (TCPA); *Luster v. Wells Fargo,* 15-1058-TWT (N.D. Ga.) (TCPA); *Prather v Wells Fargo*, 15-CV-04231-SCJ (ND. Ga) (TCPA); *Joseph et al. v. TrueBlue, Inc. et al.*, Case No. 3:14-cv-05963 (D. Wa.) (TCPA case, $5 million for 1,948 class members); *Tripp v. Berman & Rabin, P.A.,* 310 F.R.D. 499 (D. Kan. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS; *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-

- 2 -

1866-AWT (D. Conn) (Interim Co-Lead); *De Los Santos v Millword Brown, Inc.*, 9:13-cv-80670-DPG (S.D. Fl) (TCPA); *Allen v. JPMorgan Chase Bank, N.A.* 13-cv-08285 (N.D. Ill. Judge Pallmeyer) (TCPA); *Cooper v NelNet*, 6:14-cv-314-Orl-37DAB (M.D. Fl.) (TCPA); *Thomas v Bacgroundchecks*.com, 3:13-CV-029-REP (E.D. Va.) (additional class counsel); *Carrero v. LVNV Funding*, LLC, 11-CV-62439-KMW (S.D. Fl. 2016) (Unlicensed debt collector under Fl. law); *Lopera v RMS*, 12-c-9649 (N.D. Ill. Judge Wood), *Kubacki v Peapod*, 13-cv-729 (N.D. Ill. Judge Mason); *Wojcik v. Buffalo Bills, Inc.*, 8:12 CV 2414-SDM-TBM (M.D. Fla.) (TCPA); *Curnal v LVNV Funding, LLC.*, 10 CV 1667 (Wyandotte County, KS 2014) (Unlicensed debt collector under KS law); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. Judge Gottschall) (TCPA) (co-lead); *Brian J. Wanca, J.D., P.C. v. L.A. Fitness International, LLC*, Case No. 11-CV-4131 (Lake County, Il. Judge Berrones) (TCPA); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA class); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, L.L.C., et al*, 12-cv-3671 (N.D. Ill. 2013 Judge Gottschall) (TCPA); *Saf-T-Gard v. TSI*, 10-c-7671, (N.D. Ill. Judge Rowland) (TCPA); *Cain v Consumer Portfolio Services, Inc.* 10-cv-02697 (N.D. Ill. Judge Keys) (TCPA); *Iverson v Rick Levin & Associates*, 08 CH 42955 Circuit Court Cook County (Judge Cohen) (TCPA); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. Judge Bucklo) (TCPA); *Jones v. Furniture Bargains*, LLC, 09 C 1070 (N.D. Ill) (FLSA collective action); *Saf-T-Gard v. Metrolift*, 07 CH 1266 Circuit Court Cook County (Judge Rochford) (Co-Lead) (TCPA); *Bilek* v *Countrywide,* 08 C 498 (N.D. Ill. Judge Gottschall); *Pacer* v *Rochenback,* 07 C 5173 (N.D. Ill. Judge Cole); *Overlord Enterprises v. Wheaton Winfield Dental Associates,* 04 CH 01613, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. SunGard,* 03 CH 21135, Circuit Court Cook County (Judge McGann) (TCPA); *Whiting v. Golndustry,03* CH 21136, Circuit Court Cook County (Judge McGann) (TCPA).

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

80470

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

7.     I was the attorney primarily responsible for the following class settlements: *Wollert* v. *Client Services,* 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas* v. *Vacation Break USA,* 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald* v. *Washington Mutual Bank,* supra; *Wright* v. *Bank One Credit Corp.,* 99 C 7124 (N.D. Ill. Judge Guzman); *Arriaga* v. *Columbia Mortgage,* 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier* v. *Provident Mortgage,* 00 C 5464 (N.D. Ill. Judge Coar); *Largosa* v. *Universal Lenders,* 99 C 5049 (N.D. Ill. Judge Leinenweber); *Arriaga* v. *GNMortgage,* (N.D. Ill. Judge Holderman); *Williams* v. *Mercantile Mortgage,* 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid* v. *First American Title,* 00 C 4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant* v. *Old Kent, 99* C 6846 (N.D. Ill. Magistrate Judge Bobrick); *Mendelovits* v. *Sears,* 99 C 4730 (N.D. Ill. Magistrate Judge Brown); *Leon* v. *Washington Mutual,* 01 C 1645 (N.D. Ill. Judge Alesia).

8.     The individual class members' recovery in some of these settlements was substantial. For example, in one of the cases against a major bank the class members' recovery was 100% of their actual damages resulting in a payout of $1,000 to $9,000 per class member. In another case against a major lender regarding mortgage servicing responses, each class member who submitted a claim form received $1,431.   *McDonald v. Washington Mutual Bank.*

9.     In addition, to the above settlements, I was appointed class counsel in *Keim v. ADF MidAtlantic*, LLC, 2018 U.S. Dist. LEXIS 204548 (S.D. Fla., Dec. 3, 2018) (TCPA); *Braver v. Northstar Alarm Services, LLC*, No. 5:17-cv-00383-F (W.D. Ok 2018) (TCPA); *In Re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn) (Interim Co-Lead); *Stahl v. RMK Mgmt. Corp.*, 2015-CH-13459 (Cir. Ct. Cook Cty.) (landlord/tenant under Chicago RLTO); *Galvan v. NCO Fin. Sys.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA class)*; Pesce v First Credit Services*, 11-cv-01379 (N.D.

- 4 -

Ill. December 19 2011) (TCPA Class); *Smith v Greytsone Alliance*, 09 CV 5585 (N.D. Ill. 2010); *Cicilline* v. *Jewel Food Stores, Inc.,* 542 F.Supp.2d 831 (N.D. Ill. 2008) (Co-Lead Counsel for FACTA class); *Harris* v. *Best Buy Co.,* 07 C 2559,2008 U.S. Dist. LEXIS 22166 (N.D. Ill. March 20, 2008) (FACTA class); *Matthews* v. *United Retail, Inc.,* 248 F.R.D. 210 (N.D. Ill. 2008) (FACTA class); *Redmon* v. *Uncle Julio's, Inc.,* 249 F.R.D. 290 (N.D. Ill. 2008) (FACTA class); *Harris* v. *Circuit City Stores, Inc.,* 2008 U.S. Dist. LEXIS 12596,2008 WL 400862 (N.D. Ill. 2008) (FACTA class); *Pacer* v *Rockenbach Chevrolet Sales, Inc.,* 07 C 5173 (N.D. Ill. 2008) (FACTA class).

      10.     Some reported cases of mine involving consumer protection include: *Franklin v. Parking Revenue Recovery Servs.*, 832 F.3d 741 (7th Cir. 2016); *Galvan v. NCO Portfolio Mgmt. Inc.*, 794 F.3d 716, 721 (7th Cir. 2015); *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895 (7th Cir. 2015); S*mith v Greystone,* 772 F.3d 448 (7th Cir. 2014); *Clark v Absolute Collection Agency,* 741 F.3d 487 (4th 2014); *Lox v. CDA, Ltd.,* 689 F.3d 818 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.,* 668 F.3d 967 (7th Cir. Ill. 2012); *Catalan v. GMAC Mortgage Corp.*, No. 09-2182 (7th Cir. 2011) ; *Gburek v Litton Loan,* 614 F.3d 380 (7th Cir. 2010); *Sawyer v. Ensurance Insurance Services* consolidated with *Killingsworth* v. *HSBC Bank Nev., NA.,* 507 F3d 614, 617 (7th Cir. 2007), *Echevarria et al.* v. *Chicago Title and Trust Co.,* 256 F3d 623 (7th Cir. 2001*); Demitro* v. *GMAC,* 388 Ill. App. 3d 15, 16 (lst Dist. 2009); *Hill* v. *St. Paul Bank,* 329 Ill. App. 3d 7051, 1768 N.E.2d 322 (lst Dist. 2002); *In re Mercedes-Benz Tele Aid Contract Litig., 2009* U.S. Dist. LEXIS 35595 (D.N.J. 2009); *Catalan v. RBC Mortg. Co.,* 2009 U.S. Dist. LEXIS 26963 (N.D. Ill. 2009); *Elkins v. Equifax, Inc.,* 2009 U.S. Dist. LEXIS 18522 (N.D. Ill. 2009*); Harris* v. *DirecTV Group, Inc.,* 2008 U.S. Dist. LEXIS 8240 (N.D. Ill. 2008); *In re TJX Cos., Inc., Fair & Accurate Credit Transactions Act* (FACTA) Litig., 2008 U.S. Dist. LEXIS 38258 (D. Kan. 2008); *Martin* v. *Wal-Mart Stores, Inc.,* 2007 U.S. Dist. LEXIS 89715 (N.D. Ill. 2007); *Elkins* v. *Ocwen Fed. Sav. Bank*

80470

FILED DATE: 2/13/2020 3:35 PM 2020CH01810

*Experian Info. Solutions, Inc.,* 2007 U.S. Dist. LEXIS 84556 (N.D. Ill. 2007); *Harris* v. *Wal-Mart Stores, Inc.,* 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. *2007); Stegvilas* v. *Evergreen Motors, Inc.,* 2007 U.S. Dist. LEXIS 35303 (N.D. Ill. 2007); *Cook* v. *River Oaks Hyundai, Inc.,* 2006 U.S. Dist. LEXIS 21646 (N. D. Ill. 2006); *Gonzalez* v. *W. Suburban Imps.,* Inc., 411 F. Supp. 970 (N.D. Ill. 2006); *Eromon* v. *GrandAuto Sales, Inc.,* 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams* v. *Precision Recovery, Inc.,* 2004 U.S. Dist. LEXIS 6190 (N.D. Ill. 2004); *Doe* v. *Templeton,* 2003 U.S. Dist. LEXIS 24471 (N.D. Ill. 2003); *Ayala* v. *Sonnenschein Fin. Servs.,* 2003 U.S. Dist. LEXIS 20148 (N.D. Ill. 2003); *Gallegos* v. *Rizza Chevrolet, Inc., 2003* U.S. Dist. LEXIS 18060 (N.D. Ill. 2003); *Szwebel* v. *Pap's Auto Sales, Inc.,* 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone* v. *Bank of America,* 173 F. Supp.2d 809 (N.D. Ill. 2001); *Leon* v. *Washington Mutual Bank,* 164 F. Supp.2d 1034 (N.D. Ill. 2001); *Ploog v. HomeSide Lending,* 2001 WL 987889 (N.D. Ill. 2001); *Christakos* v. *Intercounty Title,* 196 F.R.D. 496 (N.D. Ill. 2000); *Batten* v. *Bank One,* 2000 WL 1364408 (N.D. Ill. 2000); *McDonald* v. *Washington Mutual Bank,* 2000 WL 875416 (N.D. Ill. 2000); and *Williamson* v. *Advanta Mtge Corp.,* 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The *Christakos* case significantly broadened title and mortgage companies' liability under Real Estate Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a class regarding mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

11.     I have argued before the Seventh Circuit, the First District of Illinois and the MultiLitigation Panel in *Townsel v. DISH Network L.L.C.*, 668 F.3d 967 (7th Cir. Ill. 2012); *Catalan* v *GMACM* (7th Cir. 2010); *Gburek* v *Litton Loan Servicing* (7th Cir. 2009); *Sawyer* v *Esurance* (7th Cir. 2007), *Echevarria, et al.* v. *Chicago Title and Trust Co.* (7th Cir. 2001); *Morris* v *Bob Watson,* (lst. Dist. 2009); *Iverson* v *Gold Coast Motors Inc.,* (lst. Dist. 2009); *Demitro* v. *GMAC* (lst Dist. 2008), *Hill v. St. Paul Bank* (lst Dist. 2002), and *In Re: Sears, Roebuck &*

80470

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

*Company Debt Redemption Agreements Litigation* (MDL Docket No. 1389.) *Echevarria* was part of a group of several cases that resulted in a nine million dollar settlement with Chicago Title.

12.     My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide.*

13.     I have lectured extensively on consumer litigation, including extensively on class actions and the TCPA.  For example, I:

a.   Presented at the National Consumer Law Center 2018 annual conference on the TCPA.

b.   Presented at the 2018 Fair Debt Collection Training Conference for two sessions on the TCPA.

c.   Presented at the National Consumer Law Center 2017 annual conference on the TCPA.

d.   Presented at the National Consumer Law Center 2016 annual conference on the TCPA.

e.   Presented at the 2016 Fair Debt Collection Training Conference for a session on TCPA Developments.

f.   Presented for the National Association of Consumer Advocates November 2015 webinar titled Developments and Anticipated Impact of Recent FCC TCPA Rules.

g.   Presented at the National Consumer Law Center 2015 annual conference in San Antonio, Tx. on the TCPA.

h.   Presented at the 2015 Fair Debt Collection Training Conference for three sessions on the TCPA.

i.   Presented at the National Consumer Law Center 2014 annual conference in Tampa Fl. for two sessions on the TCPA.

j.   Panelist for the December 2013 Strafford CLE Webinar titled TCPA Class Actions: Pursuing or Defending Claims Over Phone, Text and Fax Solicitations.

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

k.  Panelist for the December 2014 Chicago Bar Association Class Action Seminar titled "Class Action Settlements in the Seventh Circuit: Navigating Turbulent Waters."

l.  Presented at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

m.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPI lectured at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

n.  Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology.

o.  Presented for the National Association of Consumer Advocates November 2013 webinar titled Current Telephone Consumer Protection Act Issues Regarding Cell Phones.

p.  Presenter for the November 2013 Chicago Bar Association Class Action Committee presentation titled Future of TCPA Class Actions.

q.  Speaker at the Social Security Administration's Chicago office in August 2013 on a presentation on identity theft, which included consumers' rights under the Fair Credit Reporting Act.

r.  Panelist for the May 14, 2013 Chicago Bar Association Class Action Seminar titled "The Shifting Landscape of Class Litigation" as well as for the March 20, 2013 Strafford CLE webinar titled "Class Actions for Telephone and Fax Solicitation and Advertising Post-Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology."

80470

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

s. Lectured at the June 6, 2013 Consumer Law Committee of the Chicago Bar Association on the topic "Employment Background Reports under the Fair Credit Reporting Act: Improper consent forms to failure to provide background report prior to adverse action."

t. Lectured at the 2013 Fair Debt Collection Training Conference for three sessions on the TCPA.

u. Presented at the 2012 National Consumer Law Center annual conference for a session on the TCPA.

v. Presented at the 2012 Fair Debt Collection Training Conference for a session on the TCPA.

w. Panelist for Solutions for Employee Classification & Wage/Hour Issues at the 2011 Annual Employment Law Conference hosted by Law Bulletin Seminars.

x. Lectured at the 2011 National Consumer Law Center conference for a session titled Telephone Consumer Protection Act: Claims, Scope, Remedies as well as lectured at the same 2011 National Consumer Law Center conference for a double session titled ABC's of Class Actions.

y. Taught *Defenses to Foreclosures* for Lorman Education Services, which was approved for CLE credit, in 2008 and 2010.

z. Guest lecturer on privacy issues at University of Illinois at Urbana-Champaign School of Law. In March 2010.

aa. Guest speaker for the Legal Services Office of The Graduate School and Kellogg MBA Program at Northwestern University for its seminar titled: "Financial Survival Guide: Legal Strategies for Graduate Students During A Period of Economic Uncertainty."

14.     I was selected as an Illinois Super Lawyer in 2018-2014 and an Illinois Super Lawyer Rising Star each year from 2008 through 2013 and my cases have been featured in local

80470

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

newspapers such as the Chicago Tribune, Chicago Sun-Times, The Naperville Sun, Daily Herald and RedEye.

15.    Timothy J. Sostrin is a partner in the firm joining in 2011. He is a member in good standing of the Illinois bar, the U.S. District Court District of Colorado, U.S. District Court Northern District of Illinois, U.S. District Court Northern and Southern Districts of Indiana, U.S. District Court Eastern and Western Districts of Michigan, U.S. District Court Eastern District of Missouri, U.S. District Court Southern District of Texas and U.S. District Court Eastern and Western Districts of Wisconsin.

16.    Timothy J. Sostrin has zealously represented consumers in Illinois and in federal litigation nationwide against creditors, debt collectors, retailers, and other businesses engaging in unlawful practices. Tim has extensive experience with consumer claims brought under the Fair Debt Collection Practices Act, The Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Electronic Fund Transfer Act, and Illinois law. Some of Tim's representative cases include: *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (granting class certification*); Galvan v. NCO Financial Systems, Inc.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012) (granting class certification); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, LLC*, (2012 U.S. Dist. LEXIS 174222 (N.D. Ill. December 6, 2012) (granting class certification); *Jelinek v. The Kroger Co.*, 2013 U.S. Dist. LEXIS 53389 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Hanson v. Experian Information Solutions, Inc.*, 2012 U.S. Dist. LEXIS 11450 (N.D. Ill. January 27, 2012) (denying defendant's motion for summary judgment); *Warnick v. DISH Network, LLC*, 2013 U.S. Dist. LEXIS 38549 (D. Colo. 2013) (denying defendant's motion to dismiss);*Torres v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31238 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011) (denying defendant's motion for summary judgment);

80470

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

*Frydman et al v. Portfolio Recovery Associates, LLC*, 2011 U.S. Dist. LEXIS 69502 (N.D. Ill 2011) (denying defendant's motion to dismiss); *Rosen Family Chiropractic S.C. v. Chi-Town Pizza*, 2013 U.S. Dist. LEXIS 6385 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010) (granting summary judgment on TCPA claim);

17.    Tim is a member of the National Association of Consumer Advocates and ISBA. He received his Juris Doctorate, *cum laude*, from Tulane University Law School in 2006.

18.    In 2014, Michael Hilicki joined the firm. He has spent nearly all of his more-than 20-year legal career helping individuals subjected to unfair and deceptive business practices, and violations of their state and federal rights. He is experienced in a variety of areas including, but not limited to, the Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud & Deceptive Business Practices Act, Telephone Consumer Protection Act, Fair Labor Standards Act, the Illinois Security Deposit Interest Act, Illinois Security Deposit Return Act, Chicago Residential Landlord Tenant Ordinance (RLTO), and the Illinois Wage & Hour Law. He is experienced in all aspects of litigation, including arbitrations, trials, and appeals.

19.    Examples of the numerous certified class actions in which Michael has represented consumers or workers include: *Lanteri v. Credit Protection Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345 (S.D. Ind. Sept. 26, 2018); *Altman v. White House Black Market, Inc.*, 2016 WL 3946780 (N.D. Ga. July 13, 2016); *Stahl v. RMK Mgmt. Corp.*, 2015-CH-13459 (Cir. Ct. Cook Cty.); *Guarisma v. Microsoft Corp.*, 209 F.Supp.3d 1261 (S.D. Fla. 2016); *Flaum v. Doctors Associates,* 16-CV-61198-CMA (S.D. Fla.); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla.); *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015); *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla.) (on appeal); *Joseph et al. v. TrueBlue,*

*Inc. et al.*, No. 3:14-cv-05963 (D. Wa.); *Tripp v. Berman & Rabin, P.A.,* 310 F.R.D. 499 (D. Kan. 2015); *Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litig.,* Master Docket No. 3:13-cv-1866-AWT (D. Conn); *Eibert v. Jaburg & Wilk, P.C.*, 13-cv-301 (D. Minn.); *Brinkley v. Zwicker & Associates, P.C.*, 13 C 1555 (N.D. Ill.); *Kraskey v. Shapiro & Zielke, LLP*, 11-cv-3307 (D. Minn.); *Short v. Anastasi & Associates, P.A.*, 11-cv-1612 SRN/JSM (D. Minn.); *Kimball v. Frederick J. Hanna & Associates, P.C.*, 10-cv-130 MJD/JJG (D. Minn.); *Murphy v. Capital One Bank*, 08 C 801 (N.D. Ill.); *In re American Family Mut. Ins. Co. Overtime Pay Litig.*, 06-cv-17430 WYD/CBS (D. Colo.); *Nettles v. Allstate Ins. Co.*, 02 CH 14426 (Cir. Ct. Cook Cty.); *Sanders v. OSI Educ. Servs., Inc.*, 01 C 2081 (N.D. Ill.); *Kort v. Diversified Collection Servs., Inc.*, 01 C 0689 (N.D. Ill.); *Hamid v. Blatt Hasenmiller, et al.*, 00 C 4511 (N.D. Ill.); *Durkin v. Equifax Check Servs., Inc.*, 00 C 4832 (N.D. Ill.); *Torres v. Diversified Collection Services, et al.*, 99-cv-00535 (RL-APR) (N.D. Ind.); *Morris v. Trauner Cohen & Thomas*, 98 C 3428 (N.D. Ill.), *Mitchell v. Schumann*, 97 C 240 (N.D. Ill.); *Pandolfi, et al. v. Viking Office Prods., Inc.*, 97 CH 8875 (Cir. Ct. Cook Cty.); *Trull v. Microsoft Corp.*, 97 CH 3140 (Cir. Ct. Cook Cty.); *Deatherage v. Steven T. Rosso, P.A.*, 97 C 0024 (N.D. Ill.); *Young v. Meyer & Njus, P.A.*, 96 C 4809 (N.D. Ill.); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 96 C 3233 (N.D. Ill.); *Holman v. Red River Collections, Inc.*, 96 C 2302 (N.D. Ill.); *Farrell v. Frederick J. Hanna*, 96 C 2268 (N.D. Ill.); *Blum v. Fisher and Fisher*, 96 C 2194 (N.D. Ill.); *Riter v. Moss & Bloomberg, Ltd.*, 96 C 2001 (N.D. Ill.); *Clayton v. Cr Sciences Inc.*, 96 C 1401 (N.D. Ill.); *Thomas v. MAC/TCS Inc., Ltd.*, 96 C 1519 (N.D. Ill.); *Young v. Bowman, et al.*, 96 C 1767 (N.D. Ill.); *Depcik v. Mid-Continent Agencies, Inc.*, 96 C 8627 (N.D. Ill.); and *Dumetz v. Alkade, Inc.*, 96 C 4002 (N.D. Ill.).

20.     Notable appeals Michael has argued include: *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019) (FACTA case); *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018) (FDCPA case); *Franklin v. Parking Revenue Recovery Servs.*, 832 F.3d

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

80470

741 (7th Cir. 2016) (FDCPA case); *Smith v. Greystone Alliance, LLC*, 772 F.3d 448 (7th Cir. 2014) (FDCPA case), *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004) (FDCPA case); *Weizeorick v. ABN AMRO Mortgage Group, Inc.*, 337 F.3d 827 (7th Cir. 2001) (RESPA case).

21.    Michael has lectured on consumer law issues at Upper Iowa University, the Chicago Bar Association, and for the National Consumer Law Center (2019 Conference on the Fair Debt Collection Practices Act). He is a member of the Trial Bar of the United States District Court for the Northern District of Illinois, and he has represented consumers in state and federal courts around the country on a *pro hac vice* basis.

22.    Michael's published work includes *"AND THE SURVEY SAYS..." When Is Evidence of Actual Consumer Confusion Required to Win a Case Under Section 1692g of the Fair Debt Collection Practices Act in the Seventh Circuit?*, 13 Loy. Consumer L. Rev. 224 (2001).

23.    In March 2018, Theodore H. Kuyper joined the firm. Ted is currently a member in good standing of the Illinois State Bar, the United States District Court for the Northern District of Illinois, and the Seventh Circuit Court of Appeals, and has been admitted to practice *pro hac vice* in several additional United States District Courts.

24.    Ted has diverse experience prosecuting and defending class action and other large-scale litigation in trial and appellate courts under a variety of substantive laws, including without limitation the Telephone Consumer Protection Act, the Racketeer Influenced & Corrupt Organizations Act (RICO), the Fair Credit Reporting Act, the Illinois Consumer Fraud & Deceptive Business Practices Act, and the Real Estate Settlement Procedures Act, as well as Illinois and other state statutory and common law.

25.    Since joining the firm, Ted has represented consumers as counsel of record or otherwise in the following putative class actions: *Cranor v. Skyline Metrics, LLC*, No. 4:18-cv-00621-DGK (W.D. Mo.); *Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo.);

80470

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

FILED DATE: 2/13/2020 3:35 PM    2020CH01810

*Cranor v. Classified Advertising Ventures, LLC, et al.*, No. 4:18-cv-00651-HFS (W.D. Mo.); *Morgan v. Orlando Health, Inc., et al.*, No. 6:17-cv-01972-CEM-GJK (M.D. Fla.); *Morgan v. Adventist Health System/Sunbelt, Inc.*, No. 6:18-cv-01342-PGB-DCI (M.D. Fla.); *Burke v. Credit One Bank, N.A., et al.*, No. 8:18-cv-00728-EAK-TGW (M.D. Fla.); *Motiwala v. Mark D. Guidubaldi & Associates, LLC*, No. 1:17-cv-02445 (N.D. Ill.); *Buja v. Novation Capital, LLC*, No. 9:15-cv-81002-KAM (S.D. Fla.); and *Detter v. Keybank, N.A.*, No. 1616-CV10036 (Circuit Ct. of Jackson County, Missouri).

26.     Immediately prior to joining Keogh Law, Ted worked at a boutique Chicago law firm where he represented clients in a range of complex commercial and other litigation, including contract, tort, professional liability, premises and products liability, bad faith and class action. Previously, he was an associate at a nationally-renowned class action law firm, where he focused on complex commercial, consumer, class action and other large-scale, high-stakes litigation.

27.     Ted earned his Juris Doctorate from Washington University School of Law in St. Louis in 2007.  During law school, he worked as a Summer Extern for Magistrate Judge Morton Denlow (Ret.) of the United States District Court for the Northern District of Illinois, served as primary editor and executive board member of the Global Studies Law Review, and authored a student note that was published in 2007.  Ted also earned a number of scholarships and other academic accolades, including the Honors Scholar Award (top 10% for academic year) and repeated appearances on the Dean's List.

28.     Gregg Barbakoff joined the firm in October 2019.  Gregg is a civil litigator who focuses his practice on consumer law, with extensive experience litigating individual and class claims arising under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

Consumer Fraud and Deceptive Practices Act, Magnuson-Moss Warranty Act, and various consumer protection statutes.

29.     Gregg graduated magna cum laude from the Chicago-Kent College of law, where he was elected to the Order of the Coif.  While in law school, Gregg received the Class of 1976 Honors Scholarship, competed as a senior member of the Chicago-Kent Moot Court Team, and served as an editor for The Seventh Circuit Review, in which he was also published. Gregg earned his undergraduate degree from the University of Colorado at Boulder.

30.     Gregg has been named an Illinois Rising Star by Superlawyers Magazine each year since 2015, and was named an Associate Fellow by the Litigation Counsel of America.  He is licensed to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Seventh Circuit

31.     Prior to joining Keogh Law, Gregg worked at a mid-size litigation firm that specialized in consumer litigation, and leading plaintiff's firm that focused on commercial disputes and consumer class actions.

32.     The following are representative class actions in which Gregg has served as counsel of record or otherwise: *Roberts v. TIAA, FSB* (Case No. 2019 CH 04089, Cook County, Ill.); *Corrigan v. Seterus* (Case No. 17-cv-02348); *Gentleman v. Mass. Higher Ed. Corp., et al* (Case No. 16-cv-3096, N.D. Ill.); *Cibula v. Seterus* (Case No. 2015CA010910, Palm Beach County, Fla.); *Ciolini v. Seterus* (Case No. 15-cv-09427, N.D. Ill.); *Mednick v. Precor Inc.* (Case No. 14-cv-03624, N.D. Ill.); *Illinois Nut & Candy Home of Fantasia Confections, LLC v. Grubhub, Inc., et al.* (Case No. 14-cv-00949, N.D. Ill.); *Dr. William P. Gress et al. v. Premier Healthcare Exchange West, Inc.* (Case No. 14-cv-501, N.D. Ill.); *Stephan Zouras LLP v. American Registry LLC* (Case No. 14-cv-943, N.D. Ill.); *Mullins v. Direct Digital* (Case No. 13-cv-01829, N.D. Ill.); *In Re Prescription Pads TCPA Litigation* (Case No. 13-cv-06897, N.D. Ill); *Townsend v. Sterling*

- 15 -

(Case No. 13-cv-3903, N.D. Ill); *Windows Plus, Incorporated v. Door Control Services, Inc.* (Case No. 13-cv-07072, N.D. Ill); *In re Energizer Sunscreen Litigation* (Case No. 13-cv-00131, N.D. Ill.); Padilla v. DISH Network LLC (Case No. 12-cv-07350, N.D. Ill.); *Lloyd v. Employment Crossing* (Case No. BC491068 (Los Angeles County, Cal.); *In re Southwest Airlines Voucher Litigation* (Case No. 11-cv-8176, N.D. Ill.).

Executed at Chicago, Illinois, on February 13, 2020.

Keith J. Keogh

FILED DATE: 2/13/2020 3:35 PM   2020CH01810

80470